# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

JAVIER ROSALES,

      Plaintiff,

   v.

HARRELL WATTS; RAYMOND E. HOLT;
SUZANNE R. HASTINGS; JOHN V.
FLOURNOY; KEN HARRIS, JR.; and SAM
KIRCHOFF,

      Defendants.

CIVIL ACTION NO.: 2:15-cv-94

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at the Federal Correctional Institute in Jesup, Georgia

("FCI Jesup"), submitted a Complaint in the above captioned action contesting certain conditions

of his confinement.  Plaintiff has also filed a Motion to recuse the undersigned Magistrate Judge

from this case.  (Doc. 6.)  After careful consideration, the Court **DENIES** Plaintiff's Motion to

Recuse.  Additionally, the Court has conducted the requisite frivolity review of Plaintiff's

Complaint under <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 402

U.S. 388 (1971) and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb.  As

set forth below, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims for monetary

damages against Defendants in their official capacities.  I further **RECOMMEND** that the Court

**DISMISS** Plaintiff's <u>Bivens</u> claims for punitive and compensatory damages.  However,

Plaintiff's allegations arguably state colorable claims for relief under <u>Bivens</u> and the RFRA

against Defendants Harrell Watts, Raymond E. Holt, Suzanne Hastings, John V. Flournoy, Ken

Harris, and Sam Kirchoff. Consequently, the United States Marshall shall serve a copy of Plaintiff's Complaint and a copy of this Order upon these Defendants and the United States pursuant to Federal Rule of Civil Procedure 4(i) without prepayment of cost.

## BACKGROUND[1]

Plaintiff believes and practices the Santeria religion and is imprisoned at FCI Jesup. (Doc. 1, p. 3.) Plaintiff alleges that Defendant Ken Harris, Jr., the Chaplain Supervisor, at FCI Jesup has deprived Plaintiff of the ability to practice his sincerely held religious beliefs. Id. Specifically, Defendant Harris has created a policy eliminating the practice of the "Spiritual Mass" ceremony. Id. This policy has been carried out by Defendant Sam Kirchoff, the Chaplain at FCI Jesup. Id. In addition, Plaintiff complained about this policy to Defendants Watts, Holt, Hastings, and Flournoy, and each of these Defendants supported the policy. Plaintiff contends that this policy was based on discrimination against Santeria practitioners and not on any safety or security concerns. Id. Plaintiff contends there is a "Standardized Practice" for other religions including Christianity and Islam but Defendants have discriminatorily failed to establish such a practice for Santeria. (Id. at pp. 9–10.)

Plaintiff maintains that prior to Defendant Harris arriving at FCI Jesup in November of 2014, there was a "Standardized Spiritual Mass" for Santeria practitioners at the Prison. (Id. at p. 8.) This "Standardized Mass" for Santeria allowed, among other things, for each practitioner to receive a half-cut cigar "so that the practitioner could properly invoke their own spiritual protectors and to spiritually be cleansed." Id. This practice was implemented without any security or safety issues. (Id. at pp. 7–9.) However, on or about November 17, 2014, Defendant Harris terminated the practice of providing each practitioner a cigar and instead only

---

[1] The below recited facts are taken from Plaintiff's Complaint and are accepted as true, as they must be at this stage.

allowed two cigars for the ceremony.  (Id. at p. 8.)  Additionally, Plaintiff claims that due to their opposition to Defendants' policies, Defendant Harris has targeted Santeria Practitioners in other ways.  (Id. at p. 9.)  Specifically, he has not ordered supplies for Santeria Practitioners including bead necklaces containing "Ache."  Id.  Plaintiff contends that these actions have not been taken for any legitimate government interest.

In his Complaint, Plaintiff requests compensatory damages in the amount of $320.00 per day and punitive damages in the amount of $320.00 per day.  (Id. at p. 9.)  He also requests "declaratory relief" against each Defendant.  Id.

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis*.  Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress.  Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted.  28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii).  Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity.  Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . .

a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse

mistakes regarding procedural rules. <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

### I.     Motion to Recuse

Plaintiff contends that the undersigned should be recused from presiding in this matter because of the Court's prior Order in another matter. In that matter, the Court denied a plaintiff that was a Santeria Practitioner leave to proceed on appeal *in forma pauperis*. Order <u>Davila v. Logan Marshall et al.</u>, 2:15-cv-94 (S.D. Ga. October 19, 2015) ECF No. 103. After the plaintiff in that matter consented to paying the filing fee using the partial payment plan described by 28 U.S.C. § 1915(b), the Honorable Beverly Martin of the United States Court of Appeals for the Eleventh Circuit subsequently found that the appeal was not frivolous and permitted the plaintiff to proceed. Order <u>Davila v. Logan Marshall et al.</u>, 15-10749 (11th Cir. Oct. 7, 2015).

Plaintiff's Motion for Recusal is governed by 28 U.S.C. § 144 and 28 U.S.C. § 455(a) and (b)(1). "The threshold requirement under § 144 disqualification procedure is that a party file an affidavit demonstrating personal bias or prejudice on the part of the district judge against that party or in favor of an adverse party." <u>Parrish v. Bd. of Comm'rs</u>, 524 F.2d 98, 100 (5th Cir.1975).[2] The statute provides in pertinent part:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding. The affidavit shall state the facts and reasons for the belief that

---

[2]   Decisions of the former Fifth Circuit issued prior the close of business on September 30, 1981, constitute binding precedent in this Circuit. <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

bias or prejudice exists. . . . A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144. Once the affidavit is filed, the judge must determine whether the affidavit was timely, whether it was accompanied by the necessary certificate of counsel, and whether the affidavit satisfies the terms of the statute. Parrish, 524 F.2d at 100. "An affidavit is legally sufficient if it meets a three-part test: (1) the facts must be material and stated with particularity; (2) the facts must be such that, if true, they would convince a reasonable person that bias exists; and (3) the facts must show that the bias is personal, rather than judicial, in nature." United States v. Merkt, 794 F.2d 950, 960 (5th Cir. 1986).

Section 455 provides, in relevant part:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
(b) He shall also disqualify himself in the following circumstances:
(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . .

28 U.S.C. § 455. While Section 455 was enacted to broaden the range of circumstances warranting disqualification, a judge nonetheless has an obligation "not to recuse when there is no occasion for him to do so. . . . A judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation.'" Carter v. W. Pub. Co., No. 99–11959–EE, 1999 WL 994997, at *2 (11th Cir. Nov. 1, 1999) (internal alterations and citations omitted (quoting Hinman v. Rogers, 831 F.2d 937, 939 (10th Cir.1987) & United States v. Greenough, 782 F.2d 1556, 1558 (11th Cir.1986)). The test of whether a judge should be recused under this section is whether "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." United States v. Berger, 375 F.3d 1223, 1227 (11th Cir. 2004)

(quoting <u>United States v. Patti</u>, 337 F.3d 1317, 1321 (11th Cir. 2003)). A judge's impartiality must "reasonably be questioned" for the judge to recuse because "there is the need to prevent parties from . . . manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking." <u>Carter</u>, No. 99–11959–EE, 1999 WL 994997, at *2 (citing <u>FDIC v. Sweeney</u>, 136 F.3d 216, 220 (1st Cir.1998) (internal quotation marks omitted)).

While motions to recuse under Sections 144 and 455 may be referred to a judicial colleague for review, they are typically decided by the presiding judge. <u>See</u> <u>Berger v. United States</u>, 255 U.S. 22, 32-34, (1922) ("the reasons and facts for the belief the litigant entertains are an essential part of the affidavit, and must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment."); <u>United States v. Azhocar</u>, 581 F.2d 735, 738 (9th Cir. 1978) ("Only after the legal sufficiency of the affidavit is determined does it become the duty of the judge to 'proceed no further' in the case.") (quoting <u>United States v. Montecalvo</u>, 545 F.2d 684, 685 (9th Cir. 1976)); <u>Harris v. Geico Gen. Ins. Co.</u>, 961 F. Supp. 2d 1223, 1227 (S.D. Fla. 2013) ("The mere filing of a § 144 affidavit does not automatically disqualify the judge."); <u>Clark v. Deal</u>, 2:09–CV–0050–RWS, 2009 WL 4899425, at *3–4 (N.D. Ga. Dec. 11, 2009).

Plaintiff's Motion to Recuse and accompanying affidavit are not legally sufficient to warrant recusal. Plaintiff makes no factual allegation of personal bias but instead refers to the undersigned's decision in another matter. This allegation is judicial, not personal, in nature. "A judge's rulings are not a sufficient basis for recusal in the absence of a showing of pervasive bias." <u>Jones v. Luis</u>, 372 F. App'x 967, 969 (11th Cir. 2010); <u>see also</u>, <u>Draper v. Reynolds</u>, 369 F.3d 1270, 1279 (11th Cir.2004) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.") (quoting <u>Liteky v. United States</u>, 510 U.S. 540, 555 (1994)).

Moreover, nothing in the Court's prior ruling indicates a bias against Plaintiff or any other individuals. This Court will base its ruling in this matter, as in all matters, on the law, not on any prejudice.

Put succinctly, an objective, disinterested observer would not entertain a significant doubt about the undersigned's impartiality in this matter. Consequently, Plaintiff's Motion for Recusal is **DENIED**.

## II.    Dismissal of Official Capacity Claims for Monetary Damages

Plaintiff brings this action pursuant to <u>Bivens</u> and the RFRA. "<u>Bivens</u> only applies to claims against federal officers in their individual capacities; it does not create a cause of action for federal officers sued in their official capacities." <u>Sharma v. Drug Enforcement Agency</u>, 511 F. App'x 898, 901 (11th Cir. 2013) (citing <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 69–71 (2001)). Moreover, the Eleventh Circuit has held that Congress did not unequivocally waive the Government's sovereign immunity through the RFRA. <u>Davila v. Gladden</u>, 777 F.3d 1198, 1210-11 (11th Cir. 2015). Therefore, the RFRA does not authorize suits for money damages against federal officers in their official capacities. <u>Id.</u> Thus, Plaintiff's <u>Bivens</u> and RFRA claims for money damages against Defendants in their official capacities should be **DISMISSED**.

## III.    RFRA Claims

"Congress enacted RFRA ... in order to provide very broad protection for religious *1204 liberty." <u>Burwell v. Hobby Lobby Stores, Inc.</u>, ——U.S. ——, 134 S.Ct. 2751, 2760 (2014). Under the statute, the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb–1(a). If the Government takes action that substantially burdens a person's exercise of religion, it must "demonstrate[ ] that application of the burden to the person—(1) is in furtherance of a

compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb–1(b); see also, Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418 (2006) (pursuant to RFRA, the federal government must demonstrate a compelling interest when substantially burdening the exercise of religion).

The "RFRA requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." Id. at 430-31 (quoting 42 U.S.C. § 2000bb-1(b)). The Supreme Court has observed that the test for whether a person's religious exercise is substantially burdened is not "whether the religious belief asserted in a RFRA case is reasonable." Hobby Lobby, 573 U.S. at ——, 134 S.Ct. at 2778. Instead, the Court must look to "whether the [government's rule] imposes a substantial burden on the ability of the objecting part[y] to conduct [himself] in accordance with [his] religious beliefs." Id. (emphasis omitted); see also Yellowbear, 741 F.3d at 55 (noting that a burden is substantial when it "prevents the plaintiff from participating in an activity motivated by a sincerely held religious belief").

According to Plaintiff, he has been denied the ability to participate in a ritual that his Santeria belief not only motivates but requires. Additionally, he has been denied beads that are critical to his substantially held religious beliefs. Davila v. Gladden, 777 F.3d 1198, 1205 (11th Cir. 2014) ("The record before us reflects only that [Plaintiff's] religious beliefs require him to wear beads and shells infused with Ache. The Defendants presented no evidence or argument to support a finding that [Plaintiff's] exercise of his religious practices would not be burdened if he is continued to be denied these things. Plaintiff has therefore shown, at least at this stage of the

litigation, that the Defendants substantially burdened his religious exercise by flatly preventing him from having his beads and shells.")  Thus, Plaintiff arguably sets forth a plausible cause of action under the RFRA against Defendants.[3]

At this early stage, the Court declines to address whether Plaintiff's RFRA claims against Defendants in their individual capacities should be limited to injunctive relief or whether monetary damages should be available.  There is no binding precedent which addresses whether the RFRA bars claims against individual defendants for monetary damages.  See Davila v. Gladden, 777 F.3d 1198, 1210 (11th Cir. 2015) ([W]e decline to address whether RFRA authorizes suits against officers in their individual capacities.").  Those courts to address the issue have reached contradictory results.  Compare Patel v. Bureau of Prisons, No. CV 09-200 (RDM), 2015 WL 4999906, at *6 (D.D.C. Aug. 21, 2015) (as matter of first impression, RFRA authorizes individual-capacity damages claims against federal officials) and Davilla v. Nat'l Inmate Appeals Coordinator, No. CV212-005, 2012 WL 3780311, at *3 (S.D. Ga. Aug. 31, 2012) aff'd sub nom. Davila v. Gladden, 777 F.3d 1198 (11th Cir. 2015) (dismissing RFRA monetary damages claims).

---

[3]  The Court notes that this policy was formulated and carried out by Defendants Harris and Kirchoff. However, Plaintiff has arguably alleged that the other Defendants have supported or ratified this policy. Thus, at this stage, where the Court construes Plaintiff's Complaint liberally and only dismisses those claims that are not plausible, the Court will not dismiss Plaintiff's claims against the supervisory defendants.  See Wilkinson v. Secy, Florida Dep't of Corr., No. 14-11293, 2015 WL 4269267, at *4 (11th Cir. July 15, 2015) ("[Plaintiff's] claims were based not on respondeat superior, but instead on an FDOC policy or custom that allegedly substantially burdened [Plaintiff's] religious exercise.  And the claims were advanced not under § 1983 but under RLUIPA.  Put differently, [Plaintiff's] claims were predicated on a theory of direct liability rather than of vicarious liability, and were formulated under RLUIPA rather than § 1983.  For these reasons, the claims are cognizable, and the district court erred in ruling otherwise."); but see, Patel v. Bureau of Prisons, No. CV 09-200 (RDM), 2015 WL 4999906, at *8 (D.D.C. Aug. 21, 2015) ("The Court concludes that pure vicarious liability—that is, liability of supervisors based solely on the acts of their subordinates—is not sufficient to state a claim under RFRA.")

Consequently, Plaintiff's RFRA claims for injunctive relief will proceed against Defendants in their official capacities, and his RFRA claims for monetary damages and injunctive relief will proceed against Defendants in their individual capacities.[4]

## IV.   **<u>Bivens</u> Claims**

In <u>Bivens</u>, the United States Supreme Court "recognized for the first time an implied private action for damages against federal officers" for violations of certain constitutional rights. <u>Corrections Services Corp. v. Malesko</u>, 534 U.S. 61, 66 (2001).  Here, Plaintiff seeks to hold Defendants liable for violating his rights under the Free Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.

### A.   <u>Free Exercise Claims</u>

The Free Exercise Clause "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people."  <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 719 (2005).  "To establish a violation of his right to free exercise," a plaintiff "must first establish that a state actor imposed a "substantial burden" on his practice of religion."  <u>Wilkinson v. GEO Grp., Inc.</u>, No. 14-10215, 2015 WL 1526642, at *2 (11th Cir. Apr. 7, 2015) (citing <u>Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater</u>, 2 F.3d 1514, 1549 (11th Cir. 1993)).  To prove that his religious exercise was substantially burdened, a plaintiff "must present evidence that he was coerced to perform conduct that his religion forbids or prevented from performing conduct that his religion requires."  <u>Id.</u>  The defendants can then support their conduct on the ground that they applied a "neutral law of general applicability[.]"  <u>Emp't Div., Dep't of Human Res. of Or. v. Smith</u>, 494 U.S. 872, 879 (1990).

---

[4]  It may be that Plaintiff's injunctive relief claims will eventually only be treated as individual capacity claims.  <u>See</u> <u>Patel v. Bureau of Prisons</u>, No. CV 09-200 (RDM), 2015 WL 4999906, at *6 ("It is unlikely that an action for injunctive or declaratory relief under RFRA would be treated as an individual-capacity suit.").  However, the Court will not make that determination on the scant record before it.

Prisoners retain their First Amendment rights, including rights under the free exercise of religion clause. However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Brunskill v. Boyd, 141 F. App'x 771, 774 (11th Cir.2005) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, (1987)). "In the prison context, the state actor can defend the action if it is 'reasonably related to legitimate penological interests.'" Wilkinson, 2015 WL 1526642, at *2 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). Put succinctly, "[i]n a prison setting, to demonstrate a free exercise violation, a plaintiff must show that prison officials administered or implemented a policy or regulation, not reasonably related to any legitimate penological interest or security measure, which substantially burdens and significantly interferes with the practice of his religion or restricts his free exercise of a sincerely held religious belief." Hosey-Bey v. Williams, No. 2:12-CV-959-WHA, 2015 WL 4988388, at *6 (M.D. Ala. Aug. 19, 2015).

Plaintiff alleges that Defendants refused to allow him to receive religious materials and participate in a ceremony that his religion requires him to conduct. These allegations set forth plausible free exercise claims against Defendants. Therefore, these claims will survive frivolity review.

B. Equal Protection Claims

Plaintiff's claims also implicate the equal protection clause of the Fourteenth Amendment. To state a valid Equal Protection claim, a prisoner must show: (1) that he has been treated differently from other "similarly situated" inmates, and (2) that this discriminatory treatment is based upon a constitutionally impermissible basis, such as religion. Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir.2001) (per curiam). Additionally, a prisoner must

demonstrate that the defendants were motivated by a discriminatory intent or purpose. See Parks v. City of Warner Robins, 43 F.3d 609, 616 (11th Cir.1995) (requiring "proof of discriminatory intent or purpose" to show an Equal Protection Clause violation); Elston v. Talladega County Bd. of Educ., 997 F.2d 1394, 1406 (11th Cir.1993) (requiring a plaintiff to demonstrate that the challenged action was motivated by an intent to discriminate in order to establish an equal protection violation). Potential indicators of discriminatory intent include "a clear pattern of disparate impact, unexplainable on grounds other than [religion]; the historical background of the challenged decision or the specific events leading up to the decision; procedural or substantive departures from the norm; and the legislative or administrative history of the challenged statute." Parks, 43 F.3d at 617 (citation omitted).

Here, Plaintiff has stated sufficient facts to establish a plausible claim that Defendants intentionally discriminated against him on the basis of his religion. Plaintiff states that Defendants have allowed inmates of other religions, including Christians and Muslims, to receive religious materials and have a standardized practice but have refused to provide the same for Plaintiff, a Santeria practitioner, to receive similar treatment pertaining to his religion. Jones v. St. Lawrence, No. CV410-066, 2010 WL 2772440, at *2 (S.D. Ga. July 13, 2010) ("Jones alleges that Muslims have been treated differently from Christian and Jewish inmates . . . . That is all that is required to survive § 1915A screening here.").

C.  Available Damages on Bivens Claims

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The purpose of this statute is "to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive

amounts of free time with which to pursue their complaints." <u>Napier v. Preslicka</u>, 314 F.3d 528, 531 (11th Cir. 2002) (citing <u>Harris v. Garner</u>, 216 F.3d 970, 976-79 (11th Cir. 2000)). "Tracking the language of [this] statute, § 1997e(e) applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody." <u>Id.</u> at 532.

In <u>Williams v. Brown</u>, 347 F. App'x 429, 436 (11th Cir. 2009), the Eleventh Circuit stated that, "compensatory damages under § 1983 may be awarded only based on actual injuries caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated. Pursuant to 42 U.S.C. § 1997e(e), in order to recover for mental or emotional injury suffered while in custody, a prisoner bringing a § 1983 action must demonstrate more than a de minim[i]s physical injury." <u>Id.</u> (internal citations omitted) (alterations in original). Consequently, a prisoner that has not suffered any physical injury cannot recover compensatory or punitive damages. <u>Al-Amin v. Smith</u>, 637 F.3d 1192, 1199 (11th Cir. 2011) ("In sum, our published precedents have affirmed district court dismissals of punitive damage claims under the PLRA because the plaintiffs failed to meet § 1997e(e)'s physical injury requirement."); <u>Smith v. Allen</u>, 502 F.3d 1255, 1271 (11th Cir. 2007) ("Plaintiff seeks nominal, compensatory, and punitive damages. It is clear from our case law, however, that the latter two types of damages are precluded under the PLRA.") abrogated on other grounds by <u>Sossamon v. Texas</u>, 563 U.S. 277 (2011).

However, the Eleventh Circuit has also stated that "[n]ominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages." <u>Williams v. Brown</u>, 347 F. App'x at 436 (quoting <u>Hughes v. Lott</u>, 350 F.3d 1157, 1162 (11th Cir. 2003)). "Thus, a prayer

for nominal damages is not precluded by § 1997e(e)." Id. (quoting Smith v. Allen, 502 F.3d at 1271; see also, Smith v. Barrow, No. CV 311-044, 2012 WL 6519541, at *5 (S.D. Ga. Nov. 9, 2012) report and recommendation adopted, No. CV 311-044, 2012 WL 6522020 (S.D. Ga. Dec. 13, 2012) ("Nominal damages are available for violations of the First Amendment.").

In this case, Plaintiff has not alleged that he has suffered any physical injury due to Defendants' alleged constitutional violations. Accordingly, the Court should **DISMISS** his Bivens claims for compensatory and punitive damages pursuant to 42 U.S.C. § 1997e(e). However, Section 1997e(e) does not bar Plaintiff's Bivens claims for nominal damages and injunctive relief.

Consequently, Plaintiff's Bivens claims for injunctive relief will proceed against Defendants in their official capacities, and his Bivens claims for nominal damages and injunctive relief will proceed against Defendants in their individual capacities.[5]

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims for monetary damages against Defendants in their official capacities. I further **RECOMMEND** that the Court **DISMISS** Plaintiff's Bivens claims for punitive and compensatory damages.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later

---

[5] As with Plaintiff's RFRA claims, it may be that Plaintiff's Bivens claims for injunctive relief will be treated as only official capacity claims. See Edwards v. Wallace Comty. Coll., 49 F.3d 1517, 1524 n. 9 (11th Cir.1995) (stating that claims for injunctive or declaratory relief are considered official capacity claims against the relevant governmental entity). However, the Court will not make that determination at this stage.

challenge or review of the factual findings or legal conclusions of the Magistrate Judge. <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the Plaintiff.

## REMAINING CLAIMS AND DEFENDANTS

Plaintiff's allegations arguably state colorable claims for relief under <u>Bivens</u> and the RFRA against Defendants Harrell Watts, Raymond E. Holt, Suzanne Hastings, John V. Flournoy, Ken Harris, and Sam Kirchoff. Consequently, a copy of Plaintiff's Complaint and a copy of this Order shall be served upon these Defendants by the United States Marshal without prepayment of cost. Because Defendants are employees of the United States sued in their individual and official capacities, the Court further **ORDERS** that the United States Marshal serve the United States in accordance with Federal Rule of Civil Procedure 4(i). Thus, in addition to service upon Defendants individually, a copy of the complaint and summons shall be delivered, in the manner prescribed by Rule 4(i) to the United States Attorney for the Southern

District of Georgia (or the civil process clerk of the same), and the Attorney General of the United States at Washington, D.C.

The Court also provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.

## INSTRUCTIONS TO DEFENDANTS

Because Plaintiff is proceeding *in forma pauperis,* the undersigned directs that service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to the Defendant by first-class mail and request that the Defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local Rule 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d)(2). Generally, a defendant who timely returns the waiver is not required to answer the complaint until sixty (60) days after the date that the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of the Plaintiff upon oral examination. Fed. R. Civ. P. 30(a). Defendants are further advised that the Court's standard 140 day discovery period will commence upon the filing of the last answer. Local Rule 26.1. Defendants shall ensure that all discovery, including the Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

In the event that Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As the Plaintiff

will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the deposition and advise him that he may serve on Defendants, in a sealed envelope, within ten (10) days of the notice of deposition, written questions the Plaintiff wishes to propound to the witness, if any. Defendants shall present such questions to the witness seriatim during the deposition. Fed. R. Civ. P. 30(c).

## INSTRUCTIONS TO PLAINTIFF

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon their attorneys, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or their counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of immediately informing this Court and defense counsel of any change of address during the pendency of this action. Local Rule 11.1. Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery. See generally, Fed. R. Civ. P. 26, *et seq*. The discovery period in this case will expire 140 days after the filing of the last answer. Local Rule 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Local Rule 26.1. Discovery materials should **not** be filed routinely with the

Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. Local Rule 26.4.

Interrogatories are a practical method of discovery for incarcerated persons. <u>See</u> Fed. R. Civ. P. 33. Interrogatories may be served only on a <u>party</u> to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are not <u>named</u> as Defendants. Interrogatories are not to contain more than twenty-five (25) questions. Fed. R. Civ. P. 33(a). If Plaintiff wishes to propound more than twenty-five (25) interrogatories to a party, Plaintiff must have permission of the Court. If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorneys for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Fed. R. Civ. P. 26(c); 37(a)(2)(A); Local Rule 26.7.

Plaintiff has the responsibility for maintaining his own records of the case. If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page. **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Local Rule 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which may be initiated by Defendants. Upon no less than five (5) days' notice of the scheduled deposition date, the Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is required to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

## ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen (14) days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local Rule 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants' motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion. Local Rules 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact

set forth in the Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should the Defendants' motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the Defendants' statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against the Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 4th day of January, 2016.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA